UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,　　　　　　　　　　　　Case No. 3:19-cr-472

　　　　　Plaintiff,

　　v.　　　　　　　　　　　　　　　　　　　　　MEMORANDUM OPINION
　　　　　　　　　　　　　　　　　　　　　　　　AND ORDER

Dashay Jones,

　　　　　Defendant.

## I.　　INTRODUCTION AND BACKGROUND

On June 4, 2019, Ohio State Highway Patrol ("OHSP") Sergeant Timothy Williamson conducted a traffic stop on a vehicle after observing the vehicle traveling below the speed limit and repeatedly drifting over the lane line. The vehicle contained two people, a male driver and a female passenger. Williamson noticed both occupants were "overly nervous with the inability to calm down." (Doc. No. 17-1 at 6). Williamson asked the driver to accompany him to his patrol car and then spoke with the driver and passenger separately. The driver "provided an unusual and unbelievable travel story that was different from the female [passenger]." (*Id.*). Williamson requested the assistance of a narcotics detection dog, which alerted to the vehicle. The driver admitted there was an air compressor in the trunk of the vehicle that contained contraband.

Williamson took the driver and the air compressor back to an OHSP patrol post, where troopers and agents from the Columbus, Ohio office of the Drug Enforcement Agency opened the compressor and found two packages which appeared to contain approximately a kilogram of heroin

1

each. (*Id.* at 7). Officers did not conduct a field test on the packages because they suspected at least one of the packages might contain fentanyl, exposure to which would be toxic. The driver stated he did not know what was in the packages but that he was supposed to deliver them to two men in Sandusky, Ohio.

The driver agreed to cooperate with the investigation. He placed a controlled phone call and the male voice on the other end of the line told the driver to deliver the package to 1418 Buchanan Street, Sandusky, Ohio. Investigators contacted task force officers in the Sandusky area, who recognized that address as being one associated with Dashay Jones. Jones previously had been convicted of conspiracy to possess cocaine with the intent to distribute and who then was awaiting trial on unrelated charges for possession of cocaine.

One of those officers, Detective Ronald Brotherton III of the Sandusky, Ohio Police Department, submitted an affidavit in support of a request for a search warrant for the property. Brotherton indicated officers intended to attempt a controlled delivery of sham narcotics in lieu of the suspected heroin/fentanyl and requested an anticipatory search warrant, to be executed once the package was received by someone at the property and taken inside the house. (*Id.* at 8 (Officers could not execute the search warrant "unless and until the package [was] received by a person[ at the property].")).

Judge Erich J. O'Brien, a judge on the Sandusky, Ohio Municipal Court, authorized the anticipatory search warrant. The driver, now wearing a recording device, arrived at the property approximately an hour and a half later and called the same phone number as before. The male who answered instructed the driver to turn into the driveway. Jones then exited the house and asked the driver to come inside. After the driver declined, Jones asked "it's in here?" (Doc. No. 19 at 4). The driver confirmed and removed the compressor from the trunk. Jones took the compressor from the driver and returned to the house with it.

2

Officers then executed the search warrant and recovered, among other things, the sham heroin, seven cell phones, approximate $1,700 in U.S. currency, and a digital scale with cocaine residue. Jones subsequently was indicted on one count of attempted possession of heroin with the intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(a), and 846.

Jones has moved to suppress all evidence seized pursuant to the search warrant. (Doc. No. 17). He also requests a hearing. The government filed a brief in opposition to Jones' motion and contends a hearing is not necessary. (Doc. No. 19). Jones filed a brief in reply. (Doc. No. 20).

## II. DISCUSSION

Jones contends he should be granted a hearing to challenge the search warrant because Brotherton's affidavit allegedly "contains falsities[,] . . . does not contain evidence that constitutes probable cause[,] . . . and is overbroad . . . ." (Doc. No. 17 at 2).

A defendant seeking to suppress evidence is entitled to a *Franks* hearing if the defendant makes "a substantial showing that the affidavit in support of the warrant at issue included a false statement, made knowingly or intentionally, or with reckless disregard for the truth." *United States v. Cruz*, 715 F. App'x 454, 456 (6th Cir. 2017) (citing *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978)).

"[T]he traditional standard for review of an issuing magistrate's probable cause determination has been that so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, 462 U.S. 213, 236 (citation omitted) (second alteration in original). When a judge approves an anticipatory search warrant, like the one issued in this case, the warrant must include a triggering event that is "explicit, clear, and narrowly drawn," and the triggering event must be sufficient to establish probable cause. *United States v. Perkins*, 887 F.3d 272, 275 (6th Cir. 2018) (citation omitted). "It must be true not only that *if* the triggering condition occurs 'there is a fair probability that contraband or evidence of a crime will be found in a particular place,' but also that

3

there is probable cause to believe the triggering condition *will occur*." *United States v. Grubbs*, 547 U.S. 90, 96–97 (2006) (quoting *Gates,* 462 U.S. at 238) (emphasis in original).

The search warrant affidavit described the traffic stop, the canine alert, the subsequent discovery of the suspected heroin hidden in the air compressor, the driver's admission that he was delivering the compressor to Sandusky, the phone call identifying the destination address, the replacement of the suspected heroin with sham drugs, and the condition that the warrant would not be executed until the package was delivered to "a male believed to be Jones" and taken inside the residence. (Doc. No. 17-1 at 6-8). These facts were sufficient to establish probable cause to believe the triggering condition would occur and that officers then would find evidence of a crime in the location to be searched.

Jones offers a laundry list of complaints about the text of the search warrant affidavit: (1) Brotherton does not attest he listened to the controlled phone call the driver made from the OSHP post; (2) the driver said he was supposed to take the compressor and drugs to two black males in Sandusky, Ohio, but there were was only one black male at Jones' house; (3) Brotherton "clearly fails to state what the other person (if there was such a phone call made) stated"; (4) Brotherton uses words like "kilograms" and "deliver" that are used by law enforcement officers and not individuals engaged in drug trafficking; (5) Brotherton wrote he "believed" Jones was the intended recipient of the drugs, when Brotherton should have known, because Brotherton knew what Jones looked like and the officers had the driver under surveillance. (Doc. No. 17 at 2-6).

Jones fails to make a "substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false." *United States v. Hill*, 142 F.3d 305, 310 (6th Cir. 1998) (quoting *United States v. Campbell,* 878 F.2d 170, 171 (6th Cir. 1989)). Brotherton did not purport to quote what the driver said, and nothing in the law required him to quote the driver's statements rather than providing a summary of the evidence. Thus, the fact that Brotherton wrote that the

4

suspect who answered the driver's phone call "provided [the driver] with an address of 1418 Buchanan Street, Sandusky, Ohio as the location for him/her to deliver the two kilograms," (Doc. No. 17-1 at 7), is not false merely because it is not a direct quotation. (*See* Doc. No. 17 at 4).

Jones also raises the accusation that the delivery of the drugs to Jones was actually a set-up – that the driver intended to distribute the drugs himself and Brotherton intervened to arrange the controlled delivery to Jones' house, because Jones previously had sued him. (Doc. No. 17 at 3). While perhaps creative, this argument ignores reality and casts aspersions on the integrity of officers with three different law enforcement agencies without any support. Jones has no basis to dispute that Williamson pulled over the vehicle, and that he and officers from the Columbus office of the DEA discovered what they believed to be heroin in the compressor. Thus, his first step is to attempt to call into question whether or not the driver actually made a phone call – in the presence of law enforcement officers – to a person who instructed the driver to drive to 1418 Buchanan Street in Sandusky. Jones fails to explain why, if there was no such phone call, DEA agents located near Columbus would call DEA agents in Toledo so that a Sandusky police officer could set up Jones for trafficking in heroin.

Equally mystifying is Jones' allegation that maybe the driver told the Columbus-based officers that he was supposed to deliver the compressor to two black males in Columbus. (Doc. No. 20 at 3 n.2). In this version of events, law enforcement officers intentionally abandoned evidence of a drug trafficking scheme in order to help Brotherton – who, the evidence shows, had not had any involvement whatsoever in the investigation up until this point – pin the drugs on Jones.

Perhaps realizing the implausibility of the first stage of his argument, as well as needing to explain why he would accept a delivery of an air compressor after 10:00 o'clock at night from someone he did not know, Jones pivots to arguing that the government has not offered evidence to show he knew the compressor was supposed to contain drugs, or that he even was the intended

5

recipient of the compressor. (Doc. No. 17 at 6; Doc. No. 20 at 1-2). These arguments do not provide a basis for suppression. A judge making a probable cause determination is not required to determine whether the offense alleged in fact has been committed; instead the judge is tasked only with determining "(1) that it is *now probable* that (2) contraband, evidence of a crime, or a fugitive *will be* on the described premises (3) when the warrant is executed." *Grubbs*, 547 U.S. at 96; *see also Gates*, 462 U.S. at 235 (The probable-cause standard requires officer establish "only the probability, and not a prima facie showing, of criminal activity.") (citation omitted).

Next, Jones complains Brotherton "lost credibility" with a judge on the Erie County Court of Common Pleas in unrelated cases before that court, implying that, therefore, I should conclude nothing Brotherton says can be trusted. (Doc. No. 20 at 2-3). Even if I were to assume Jones' synopsis is accurate, Jones does not identify any Supreme Court or Sixth Circuit case holding that a credibility determination by one judge in an entirely unrelated case constitutes a "substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false." *Hill*, 142 F.3d at 310.

Finally, Jones asserts the search warrant affidavit is overbroad because it permitted officers to search for "cigarette rolling papers" and "papers and documents tending to establish person(s) in control of the premises." (Doc. No. 17 at 6-7). He argues officers did not need to search his house at all, because they could have simply asked him to turn over the compressor. (*Id*.).

This argument falls short. The warrant, based upon the triggering condition of the delivery and receipt of the compressor containing the sham heroin, permitted officers to seize those and other seemingly innocuous items if those items reasonably could be evidence of violations of Ohio drug and weapons laws. (Doc. No. 17-1 at 3). "A warrant that empowers police to search for something satisfies the [Fourth Amendment's] particularity requirement if its text constrains the search to evidence of a specific crime." *United States v. Castro*, 881 F.3d 961, 965 (6th Cir. 2018).

When read in a "commonsense" manner, *Gates*, 462 U.S. at 236, the search warrant is sufficiently particular to direct officers searching Jones' house in adherence to constitutional boundaries.

Judge O'Brien's probable-cause finding is entitled to "great deference." *United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013). Jones fails to identify any plausible basis to set aside that finding.

### III.   CONCLUSION

For these reasons, I deny Jones' request for a hearing and his motion to suppress. (Doc. No. 17).

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge